N8FKMCGP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            23 CR 16 (JHR)

CHARLES McGONIGAL,

                                     Plea
        Defendant.

------------------------------x

                                New York, N.Y.
                                August 15, 2023
                                12:25 p.m.

Before:

                    HON. JENNIFER H. REARDEN,

                                  District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
REBECCA DELL
HAGAN C. SCOTTEN
DEREK WIKSTROM
     Assistant United States Attorneys

BRACEWELL & GIULIANI, LLP
     Attorneys for Defendant
BY:  SETH DAVID DuCHARME
     MEAGAN C. MALONEY

Also Present:

Christina Clark, U.S. DOJ, National Security Division
Christopher De Grandpre, USAO Paralegal

N8FKMCGP

```
1        (Case called)

2        MS. DELL:  Rebecca Dell, Hagan Scotten, and Derek

3   Wikstrom, for the government.  We're also joined at counsel

4   table by Christina Clark, from the National Security Division,

5   and Christopher De Grandpre, who's a paralegal specialist at

6   our office.

7        THE COURT:  Hello, all.

8        MR. DuCHARME:  For Mr. McGonigal, Seth DuCharme and

9   Megan Maloney.  Good afternoon, your Honor.

10        THE COURT:  Good afternoon.  Please be seated.

11        We are here today in the matter of United States v.

12   Charles McGonigal, Case No. 23 CR 16.

13        It is my understanding that Mr. McGonigal wishes to

14   enter a plea of guilty to a one-count superseding information,

15   S1:23 CR 16, and waive his right to indictment.

16        Is that correct, Mr. DuCharme?

17        MR. DuCHARME:  It is, your Honor.

18        THE COURT:  I'm going to ask you, Mr. DuCharme, to

19   please place in front of your client several documents, if you

20   have them, that I have in front of me and that I am going to be

21   referring to today.

22        I have a copy of a document with three signatures on

23   it, that I will refer to as the waiver of indictment form.  I

24   also have a copy of an information that includes in its

25   designation the letter S and the number 1; that's the
```

N8FKMCGP

1    superseding information.  And then I have a copy of a letter,

2    dated July 14, 2023, from the U.S. Attorney's Office to you;

3    that's the plea agreement.

4            You have that?

5            MR. DuCHARME:  Perfect.

6            THE COURT:  Okay.  If you could please place all of

7    those documents in front of or near Mr. McGonigal.

8            MR. DuCHARME:  They are, your Honor.

9            THE COURT:  All right.  Thank you.

10           Mr. McGonigal, I'd like to ask you some preliminary

11   questions.  A few months ago, you appeared at a proceeding

12   before Magistrate Judge Sarah Cave in connection with a

13   charging instrument that was an indictment.  At that

14   proceeding, you were asked whether you wished to plead guilty

15   or not guilty to the charges in the indictment.

16           Do you remember that?

17           THE DEFENDANT:  I do, your Honor.

18           THE COURT:  Okay.

19           And you responded that you wished to plead not guilty

20   to the charges in the indictment; is that right?

21           THE DEFENDANT:  That's correct, your Honor.

22           THE COURT:  What I understand you would like to do

23   this afternoon is the following:  In the first instance, you

24   will waive your right to be indicted by a grand jury, and if

25   you do, in fact, waive that right, then you will be consenting

N8FKMCGP

1    to the filing of the information that is in front of you or

2    near you, and that has the designation S1:23 CR 16.

3            I understand that that superseding information would

4    take the place of the indictment as to you in this case, and

5    that you would be pleading guilty to the count contained in

6    that information.

7            Is that correct?  Is that what you wish to do today?

8            THE DEFENDANT:  That's correct, your Honor.

9            THE COURT:  As a result, I need to ask you a series of

10   questions.  I'm going to start by explaining the purpose of the

11   questions and why it's important that I ask all of them.

12           Let me just go off the record for one second,

13   Mr. Walker.

14           (Pause)

15           THE COURT:  Back on the record.

16           Mr. McGonigal, I need to ensure that you are competent

17   this afternoon to take the steps that I just mentioned; that

18   is, I need to assure myself that you can see and hear and

19   understand what is going on, and that you are not under any

20   kind of influence, be it physical, emotional, or

21   pharmaceutical, that would keep you from understanding what's

22   happening in court this afternoon.

23           If I find that you are competent, I'm going to talk to

24   you about your waiver of indictment and allowing the filing of

25   the superseding information.  Then, if the information is

N8FKMCGP

| | |
|---|---|
| 1 | filed, we are going to talk about your plea.  I will ask you |
| 2 | certain questions to ensure that you are pleading guilty |
| 3 | because you are, in fact, guilty and not for any other reason; |
| 4 | to ensure that you understand the rights that you would be |
| 5 | giving up by pleading guilty; and to ensure that you understand |
| 6 | what the potential consequences of a guilty plea, including the |
| 7 | sentence that could be imposed upon you, and I'm going to hear |
| 8 | from you about what it is that you did that makes you believe |
| 9 | that you are guilty of the offense charged in the superseding |
| 10 | information. |
| 11 | At times, I might cover a point more than once, and if |
| 12 | I do, that will be because it's an important point that I want |
| 13 | to make sure you understand before we move forward. |
| 14 | It is critical that you understand each question |
| 15 | before you answer it.  If there is anything I'm saying that you |
| 16 | don't understand, I want you to tell me, and Mr. DuCharme or I |
| 17 | will explain more fully. |
| 18 | You may also ask at any time for a question to be |
| 19 | repeated.  If at any point, you would like to speak with |
| 20 | Mr. DuCharme for any reason, let me know, and I will allow |
| 21 | however much time you wish to speak with him. |
| 22 | Do you understand? |
| 23 | THE DEFENDANT:  I do, your Honor. |
| 24 | THE COURT:  I'm going to ask that you now please stand |
| 25 | so that you may be placed under oath. |

N8FKMCGP

1              (Defendant sworn)

2              THE DEPUTY CLERK:  Please state your name for the

3     record.

4              THE DEFENDANT:  Charles McGonigal.

5              THE DEPUTY CLERK:  Have a seat, sir.

6              THE COURT:  Okay.  Mr. McGonigal, you're now under

7     oath, which means that if you answer any of my questions

8     falsely, you may be subject to prosecution for the separate

9     crimes of perjury, obstruction of justice, or making false

10    statements.

11             Do you understand?

12             THE DEFENDANT:  I do, your Honor.

13             THE COURT:  Please state your full name?

14             THE DEFENDANT:  Charles McGonigal.

15             THE COURT:  How old are you, Mr. McGonigal?

16             THE DEFENDANT:  Fifty-five years old.

17             THE COURT:  How far did you go in school?

18             THE DEFENDANT:  Graduate school.  I have a Master's

19    degree.

20             THE COURT:  And what is your Master's in?

21             THE DEFENDANT:  Political science and international

22    studies.

23             THE COURT:  Have you ever been treated or hospitalized

24    for any mental illness?

25             THE DEFENDANT:  No.

N8FKMCGP

1          THE COURT:  Are you now, or have you recently been,

2    under the care of either a doctor or a mental health

3    professional, like a psychologist or a psychiatrist?

4          THE DEFENDANT:  No.

5          THE COURT:  Have you ever been treated or hospitalized

6    for any type of addiction, such as drug or alcohol addiction?

7          THE DEFENDANT:  No.

8          THE COURT:  Over the past 48 hours, have you taken any

9    drugs, medicine, or pills or had any alcohol?

10          THE DEFENDANT:  I had a glass of wine, your Honor.

11          THE COURT:  When was that?

12          THE DEFENDANT:  Last night, approximately at 8:00 p.m.

13          THE COURT:  Are you feeling physically well today?

14          THE DEFENDANT:  I feel great.  Thank you.

15          THE COURT:  Is your mind clear today?

16          THE DEFENDANT:  My mind is clear.

17          THE COURT:  You understand why we are here today,

18    right?

19          THE DEFENDANT:  I do, your Honor.

20          THE COURT:  Are you represented by a lawyer?

21          THE DEFENDANT:  I am represented by Mr. DuCharme and

22    Ms. Maloney, from Bracewell.

23          THE COURT:  Mr. DuCharme, from discussing this matter

24    with Mr. McGonigal, do you believe he is capable of

25    understanding the nature of today's proceeding?

N8FKMCGP

1          MR. DuCHARME:  I do, your Honor; I'm confident that he

2     does.

3          THE COURT:  In your judgment, does he understand the

4     rights that he will be giving up by pleading guilty?

5          MR. DuCHARME:  He does.

6          THE COURT:  Do you have any doubt as to

7     Mr. McGonigal's competence to enter a plea at this time?

8          MR. DuCHARME:  Not at all.

9          THE COURT:  Ms. Dell, do you have any doubt as to

10    Mr. McGonigal's competence to enter a plea at this time?

11         MS. DELL:  No, your Honor.

12         THE COURT:  Mr. McGonigal, have you fully discussed

13    your case with your attorney, including the charge to which you

14    intend to plead guilty and any possible defenses you may have

15    to that charge?  Just a yes-or-no answer, please.

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  You've communicated with him directly; is

18    that right?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Were you able to ask Mr. DuCharme any

21    questions you might have had about the charge to which you wish

22    to plead guilty today or about your plea agreement?

23         THE DEFENDANT:  Yes, we have discussed it extensively,

24    your Honor, and I think I have a complete understanding of the

25    charge.

N8FKMCGP

1          THE COURT:  Have you and Mr. DuCharme discussed the

2     consequences of pleading guilty?

3          THE DEFENDANT:  We have discussed the consequences,

4     and I understand those consequences, your Honor.

5          THE COURT:  Are you satisfied with your attorneys and

6     their representation of you?

7          THE DEFENDANT:  More than satisfied, your Honor.

8          THE COURT:  Based on my observations of Mr. McGonigal,

9     his demeanor, and his responses to my questions, as well as the

10    representations of counsel, I find Mr. McGonigal fully

11    competent to enter an informed plea of guilty.

12         I will turn now to the waiver of indictment.

13         Mr. McGonigal, the document in this case that contains

14    the charge against you is the superseding information that I

15    referred to previously.  You have a constitutional right to be

16    charged by a grand jury in an indictment instead of by the

17    prosecutor in an information.  In other words, you have the

18    right to be charged a different way than you have actually been

19    charged.

20         Do you understand?

21         THE DEFENDANT:  I understand, your Honor.

22         THE COURT:  And that right to be charged in an

23    indictment means that you have a right to be charged by a grand

24    jury, which is composed of a group of at least 16, but not more

25    than 23, citizens.  You cannot be charged by a grand jury

N8FKMCGP

1    unless 12 of those grand jurors find that there is probable

2    cause to charge and vote for an indictment.

3              Do you understand?

4              THE DEFENDANT:  I understand, your Honor.

5              THE COURT:  The grand jury might or might not indict

6    you for the crime charged in the superseding information.  Do

7    you understand that?

8              THE DEFENDANT:  I understand, your Honor.

9              THE COURT:  Have you discussed waiving your right to

10   indictment with your attorney?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  And do you understand that right, the

13   right to be indicted by a grand jury?

14             THE DEFENDANT:  Completely, your Honor.

15             THE COURT:  Okay.

16             The superseding information charges you in one count;

17   specifically, you are charged with having conspired from at

18   least in or about spring of 2021 through at least in or about

19   November 2021 to commit violations of the International

20   Emergency Economic Powers Act, and to commit money laundering,

21   in violation of Title 18, United States Code, Section 371.

22             Have you read the superseding information?

23             THE DEFENDANT:  I have, your Honor.

24             THE COURT:  And you have discussed the charge in the

25   superseding information with your attorney; is that right?

N8FKMCGP

1          THE DEFENDANT:  I have, your Honor.

2          THE COURT:  You understand the charge?

3          THE DEFENDANT:  I do understand the charge.

4          THE COURT:  I just summarized the superseding

5    information, but would you like me to read it word for word for

6    you, or do you waive its public reading?

7          THE DEFENDANT:  I waive its public reading, your

8    Honor.

9          THE COURT:  Okay.

10         I also have in front of me a waiver of indictment.

11    This is your signature on the waiver of indictment; is that

12    correct?

13         THE DEFENDANT:  That is correct, your Honor.

14         THE COURT:  You signed this earlier today?

15         THE DEFENDANT:  I did, your Honor.

16         THE COURT:  Did you discuss the waiver of indictment

17    with your attorney?

18         THE DEFENDANT:  I have, your Honor.

19         THE COURT:  And he explained it to you?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  You understand it?

22         THE DEFENDANT:  I understand it.

23         THE COURT:  Again, do you understand that if you do

24    not waive indictment, and if the government wanted to prosecute

25    you for this charge contained in the superseding information,

N8FKMCGP

1    it would have to present your case to a grand jury, which might

2    or might not indict you?

3            THE DEFENDANT:  I understand, your Honor.

4            THE COURT:  Do you understand that you have no

5    obligation to waive indictment?

6            THE DEFENDANT:  I understand that.

7            THE COURT:  Do you understand that by signing the

8    waiver of indictment, you have given up your right to have your

9    case presented to a grand jury?

10            THE DEFENDANT:  I understand, your Honor.

11            THE COURT:  Did anyone make any threats or promises to

12    you in order to induce you to waive indictment?

13            THE DEFENDANT:  No.

14            THE COURT:  Do you want to waive, give up, your right

15    to be indicted by a grand jury?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Mr. DuCharme, is there any reason

18    Mr. McGonigal should not be allowed to waive indictment?

19            MR. DuCHARME:  No, your Honor.

20            THE COURT:  Are you satisfied that Mr. McGonigal's

21    waiver is knowingly, voluntarily, and intelligently being made?

22            MR. DuCHARME:  Yes, your Honor.

23            THE COURT:  Ms. Dell, do you know of any reason why I

24    should not find that Mr. McGonigal has knowingly, voluntarily,

25    and intelligently waived his right to be indicted by a grand

N8FKMCGP

1    jury?

2                MS. DELL:  I know of no reason.

3                THE COURT:  I find that Mr. McGonigal is fully

4    competent and aware of the nature of his right to require the

5    government to proceed by way of indictment.

6                I further find that this waiver of indictment is being

7    made freely, intelligently, knowingly, and voluntarily.  The

8    waiver is, therefore, accepted.

9                The charging document that is the superseding

10   information, which contains one count alleging a violation

11   under Title 18, United States Code, Section 371, is deemed

12   filed.

13               Before I accept your plea, Mr. McGonigal, I'm going to

14   ask you some additional questions.  These questions are

15   intended to satisfy the Court that you wish to plead guilty

16   because you are, in fact, guilty, and that you fully understand

17   your rights and the consequences of your plea.

18               I am going to start by explaining certain

19   constitutional rights that you have and that you would be

20   giving up by pleading guilty.  Again, please listen carefully

21   to what I am going to explain to you, and stop me if you have

22   any questions if anything is unclear, and either I or

23   Mr. DuCharme will explain anything further.  You may also ask

24   me to repeat any question.

25               It is very important that you understand exactly what

N8FKMCGP

1    you are doing here today and the rights that you are giving up

2    by pleading guilty.

3           Under the Constitution and laws of the United States,

4    you have a right to plead not guilty to the charge in the

5    superseding information, as you previously did with respect to

6    the indictment, and you have that right, to plead not guilty,

7    even though you waived your right to be indicted by a grand

8    jury.

9           Do you understand that?

10           THE DEFENDANT:  I understand, your Honor.

11           THE COURT:  If you did not plead guilty, then you

12    would be entitled to a speedy and public trial by a jury on the

13    charge contained in the superseding information.  Do you

14    understand that?

15           THE DEFENDANT:  I understand, your Honor.

16           THE COURT:  At trial, you would be presumed innocent,

17    and the government would be required to prove your guilt by

18    competent evidence beyond a reasonable doubt before you could

19    be found guilty.

20           Do you understand?

21           THE DEFENDANT:  I understand, your Honor.

22           THE COURT:  A jury of 12 people would have to agree

23    unanimously that you were guilty, and you would not have to

24    prove that you were innocent if you were to go to trial.  Do

25    you understand that?

N8FKMCGP

1          THE DEFENDANT:  I understand, your Honor.

2          THE COURT:  At that trial, and at every stage of your

3     case, you would be entitled to be represented by a lawyer, and

4     if you could not afford a lawyer, one would be appointed at

5     public expense, meaning free of cost, to represent you.  In

6     other words, your decision to plead guilty should not depend on

7     whether you could afford a lawyer.

8          Do you understand that?

9          THE DEFENDANT:  I understand, your Honor.

10          THE COURT:  During a trial, the witnesses for the

11    government would have to come to court and testify in your

12    presence, and your lawyer could cross-examine the witnesses for

13    the government, object to evidence offered by the government,

14    and offer evidence on your own behalf if you so desired.  You

15    would have the right to have subpoenas issued or other process

16    that could be used to compel witnesses to testify in your

17    defense.

18          Do you understand that?

19          THE DEFENDANT:  I understand, your Honor.

20          THE COURT:  At a trial, you would have the right to

21    testify if you chose to do so.  You would also have the right

22    not to testify, and if you decided not to testify, no one,

23    including the jury, could draw any inference or suggestion of

24    guilt from the fact that you did not testify.

25          Do you understand?

N8FKMCGP

1    THE DEFENDANT:  I understand, your Honor.

2    THE COURT:  Before trial, you would be entitled to

3    discovery from the government, that is, evidence and

4    information that the government would be required by law to

5    produce to you.  You would also have an opportunity to seek

6    suppression or exclusion of any evidence that the government

7    might use against you at a trial.

8    Do you understand?

9    THE DEFENDANT:  I understand, your Honor.

10    THE COURT:  And if you were convicted at a trial, you

11    would have the right to appeal that verdict.  Do you understand

12    that?

13    THE DEFENDANT:  I understand, your Honor.

14    THE COURT:  Even now, Mr. McGonigal, as you are

15    entering this guilty plea, you have the right to change your

16    mind and not plead guilty and, instead, go to trial on the

17    charge contained in the superseding information.

18    Do you understand?

19    THE DEFENDANT:  I understand, your Honor.

20    THE COURT:  If you plead guilty, and I accept your

21    plea, you will give up your right to a trial and the other

22    rights that I have just explained, other than your right to a

23    lawyer, which you will have regardless of whether you plead

24    guilty.  But there will be no trial, and I will enter a

25    judgment of guilty and at a later date sentence you on the

N8FKMCGP

1  basis of your plea, after I have received a presentence report,

2  prepared by the United States Probation Department, and any

3  submissions that I receive from your lawyer and the lawyer for

4  the government.

5          Do you understand?

6          THE DEFENDANT:  I understand, your Honor.

7          THE COURT:  There will be no appeal with respect to

8  whether you did or did not commit the offense to which you are

9  pleading guilty or with respect to whether the government could

10  use whatever evidence it has against you.

11          Do you understand that?

12          THE DEFENDANT:  I understand, your Honor.

13          THE COURT:  And if you plead guilty, you will also

14  have to give up your right not to incriminate yourself.  That

15  is because in a few minutes, I am going to ask you questions

16  about what you did, in order to satisfy myself that you are

17  guilty as charged, and you will have to admit and acknowledge

18  your guilt.

19          Do you understand that?

20          THE DEFENDANT:  I understand, your Honor.

21          THE COURT:  Do you have any questions at this point

22  about any of the rights that I have explained?

23          THE DEFENDANT:  No, your Honor, I don't.

24          THE COURT:  And you are willing to give up the rights

25  that I have just detailed; is that correct?

N8FKMCGP

1          THE DEFENDANT:  I am willing to do so, yes.

2          THE COURT:  You understand that by pleading guilty,

3    you are giving up your right to a trial and the other rights

4    that I just recited?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Mr. McGonigal, you are charged in

7    Count One of the superseding information with conspiring to

8    violate the International Emergency Economic Powers Act and to

9    commit money laundering, in violation of Title 18, United

10   States Code, Section 371.

11         You understand that that is the charge, correct?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Ms. Dell, would you please recite the

14   elements of Count One?

15         MS. DELL:  Yes.

16         In order to prove Count One of the information, the

17   government would be required to prove beyond a reasonable doubt

18   the following four elements:

19         First, two or more persons entered the unlawful

20   agreement charged in Count One of the superseding information;

21         Second, the defendant knowingly and willfully became a

22   member of the conspiracy;

23         Third, one of the members of the conspiracy knowingly

24   committed at least one of the overt acts charged in the

25   superseding information;

N8FKMCGP

1          And, fourth, the overt act was committed to further

2     some objective of the conspiracy.

3          Here, there are two objects to the charged conspiracy:

4          First, the violation of the International Emergency

5     Economic Powers Act, also known as IEEPA, in violation of

6     Title 50, United States Code, Section 1705, Executive Orders

7     13660, 13661, and 13662, and 31 CFR Section 589.201.

8          The government would also be required to prove by a

9     preponderance of the evidence that venue is proper in the

10    Southern District of New York.

11         THE COURT:  What about the elements of the money

12    laundering offense?

13         MS. DELL:  You want me to recite the elements of money

14    laundering?

15         THE COURT:  Well, there are two objectives, correct?

16         MS. DELL:  Oh.  The second object is money laundering,

17    in violation of Title 18, United States Code, Section

18    1956(a)(1)(B)(i).

19         THE COURT:  Okay.

20         You mentioned venue; is that correct?  You would also

21    be required to prove by a preponderance of the evidence that

22    the crime occurred in the Southern District of New York?

23         MS. DELL:  Yes, your Honor.

24         THE COURT:  Mr. McGonigal, do you understand

25    everything you just heard from Ms. Dell?

N8FKMCGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you need anything that she said to be

3    repeated to you?

4          THE DEFENDANT:  No.

5          THE COURT:  Is there anything she said that's unclear

6    to you?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Do you understand that if you were to go

9    to trial, with the exception of venue, the government would

10   have to prove all of those elements beyond a reasonable doubt?

11         THE DEFENDANT:  I understand.

12         THE COURT:  And that if you change your plea to guilty

13   here today, the government will not have to prove those

14   elements?

15         THE DEFENDANT:  I understand.

16         THE COURT:  What I'm going to do now, Mr. McGonigal,

17   is talk to you about the maximum possible penalties for

18   Count One in the superseding information.  When I say maximum,

19   I mean the most that could possibly be imposed.  It does not

20   necessarily mean that you will receive that penalty, but I want

21   to make sure you understand that by pleading guilty, you are

22   opening yourself up to the possibility of receiving any

23   combination of punishments up to the maximums that I'm about to

24   describe.

25         Do you understand?

N8FKMCGP

1          THE DEFENDANT:  I understand, your Honor.

2          THE COURT:  Do you understand that the maximum term of

3   imprisonment for this offense is five years?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand that this offense

6   carries a maximum term of supervised release of three years?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Supervised release means that, upon your

9   release from prison, you would be subject to the supervision of

10  the probation department.  There would be terms of supervised

11  release that you would be required to comply with, and if you

12  were to violate those terms, you could be returned to prison,

13  without a jury trial, for all or part of the term of supervised

14  release imposed by the Court.  Under those circumstances, you

15  would not get any credit for any time you had served in prison

16  as a result of your sentence for this crime.  You would also

17  not get any credit for any time that you had spent on

18  postrelease supervision.

19          Do you understand that?

20          THE DEFENDANT:  I understand, your Honor.

21          THE COURT:  You should also understand that there is

22  no parole in the federal system.  If you are sentenced to a

23  term of imprisonment, you will not be released early on parole.

24  There is an opportunity to earn credit for good behavior, but

25  even then, you would have to serve at least 85 percent of the

N8FKMCGP

1    time that you're sentenced to.

2              Do you understand that?

3              THE DEFENDANT:  I understand, your Honor.

4              THE COURT:  There are also certain financial penalties

5    associated with this offense.

6              The maximum allowable fine for Count One is the

7    greatest of $250,000 or twice the gross pecuniary gain derived

8    from the offense or twice the gross pecuniary loss to persons

9    other than yourself as a result of the offense.

10             Do you understand that?

11             THE DEFENDANT:  I understand, your Honor.

12             THE COURT:  In addition, I could order restitution to

13   any person or entity that has been injured as a result of your

14   conduct.

15             Ms. Dell, I don't believe any restitution has been

16   requested here; is that right?

17             MS. DELL:  That's correct.

18             THE COURT:  I could also order you to forfeit any

19   proceeds that you may have derived from the offense or any

20   property that you may have used to commit or to facilitate the

21   commission of the offense.  If you plead guilty, you are

22   admitting to the forfeiture allegations in the superseding

23   information.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

N8FKMCGP

1          THE COURT:  I have just been handed a consent

2     preliminary order of forfeiture that appears to have been

3     executed by everyone — the government, Mr. McGonigal, and

4     Mr. DuCharme.

5          Does the government request that at the close of this

6     proceeding, assuming the plea goes forward, that I execute and

7     docket the order?

8          MS. DELL:  Yes, your Honor.

9          THE COURT:  Assuming I accept the plea toward the end

10     of this proceeding, I will execute it and have it docketed.

11          Mr. McGonigal, I must order a mandatory special

12     assessment of $100.  Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand that the penalties that

15     we just discussed are the maximum possible penalties to which

16     you are subject in this case?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  I'm going to ask some additional questions

19     now that I must ask, and I don't expect that all of them will

20     be relevant to you.  As I go through them, I will explain to

21     you why I'm asking, but I wanted to start by previewing that

22     they might not all be relevant to you.

23          You are a United States citizen, correct?

24          THE DEFENDANT:  Correct.

25          THE COURT:  The reason I ask that is, if you are not a

N8FKMCGP

United States citizen, then you would likely lose your right to

remain in the United States, and you could be deported.

Do you also understand that as a result of your guilty

plea, you could lose certain valuable civil rights, to the

extent that you have those rights today or could obtain them in

the future.  Those rights would include the right to vote, the

right to serve on a jury, the right to hold public office, and

the right to possess a firearm.

Are you aware of that, Mr. McGonigal?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you serving any other sentence at this

time?

THE DEFENDANT:  No, your Honor.

THE COURT:  I understand that you are being prosecuted

for a separate offense in the District of Columbia.  You should

understand that your sentence in this case could be consecutive

with any other sentence, state or federal, that you are serving

or that you could end up serving.  In other words, the sentence

imposed in this case may be in addition to any other federal or

state sentence that you have or may in the future have.

Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  We are now going to talk about sentencing.

Without providing the details of your communications,

please tell me if you have discussed the process of sentencing

N8FKMCGP

1   with your attorney.

2            THE DEFENDANT:  Yes, we have.

3            THE COURT:  Do you understand that in connection with

4   sentencing, I must review certain factors that are set forth in

5   the statute?  Those factors are commonly referred to as the

6   3553(a) factors because that is the statutory provision that

7   contains them.

8            Do you understand that there are sentencing factors

9   that I must consider in connection with sentencing you?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Do you understand that one of the factors

12   that I must consider is something called the United States

13   Sentencing Guidelines?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  If I use the term "guidelines" or

16   "sentencing guidelines," that is what I am referring to, the

17   United States Sentencing Guidelines.  Do you understand?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Have you spoken, yes or no, with your

20   attorney about the sentencing guidelines?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  I want to make sure you understand that if

23   anyone has attempted to predict for you what your ultimate

24   sentence will be, that person's prediction might be incorrect.

25   I am the judge who will be sentencing you, and right now, I

N8FKMCGP

1    don't have the information that I will need in order to

2    sentence you properly.  I need to hear from you later on in

3    this proceeding, I need to hear from the probation office, and

4    review the presentence investigation report that they will

5    prepare, and I need to hear from you and your attorney and from

6    the attorneys for the government in connection with sentencing.

7            Do you understand that today, no one can predict with

8    any confidence what your ultimate sentence will be?

9            THE DEFENDANT:  Yes, your Honor, I understand.

10           THE COURT:  More specifically, do you understand that

11   if your lawyer or anyone else has attempted to predict what

12   your sentence will be in this case, their predictions could be

13   wrong?

14           THE DEFENDANT:  I understand that, your Honor.

15           THE COURT:  Do you understand that if your ultimate

16   sentence is different from what anyone might have suggested to

17   you that it might be, or if it is different from what you

18   yourself expected or hoped for, or if it is different from any

19   guidelines range that may have been discussed in your dealings

20   with the government, you will still be bound by your guilty

21   plea, you will not be able to withdraw your plea of guilty

22   based merely on dissatisfaction with your sentence?

23           Do you understand?

24           THE DEFENDANT:  I understand, your Honor.

25           THE COURT:  It is my understanding that a plea

N8FKMCGP

1    agreement has been reached between you and the government; is

2    that correct?

3              THE DEFENDANT:  That's correct, your Honor.

4              THE COURT:  I have here a copy of the letter plea

5    agreement, dated July 14, 2023, from the U.S. Attorney's Office

6    to your attorney, Mr. DuCharme.  I have a copy that has only

7    been signed by the government.

8              MR. DuCHARME:  We've signed it, your Honor.  I think

9    there's at least three copies.

10             MS. DELL:  The government provided a signed copy to

11   your deputy.

12             THE COURT:  Did you hand it up to me already?

13             THE DEPUTY CLERK:  Yes, Judge.  It should be in the

14   pile.

15             THE COURT:  Okay.

16             THE DEPUTY CLERK:  Sorry.

17             THE COURT:  Turning to the last page of the plea

18   agreement, it appears to have been signed by you,

19   Mr. McGonigal, today; is that correct?

20             THE DEFENDANT:  That's correct, your Honor.

21             THE COURT:  And that is your signature on the plea

22   agreement?

23             THE DEFENDANT:  Yes, it is, your Honor.

24             THE COURT:  Before you signed the plea agreement, did

25   you read it?

N8FKMCGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Did you discuss it with your attorneys?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And before you signed it, did your

5    attorneys explain it to you and answer any questions you might

6    have had about the plea agreement?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Before you signed the plea agreement, did

9    you fully understand it?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  One feature of the plea agreement is that

12    you and the government have agreed on how the United States

13    Sentencing Guidelines apply to your case; is that correct?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  It's important for you to understand that

16    the plea agreement is binding on you, and it's binding on the

17    government; however, it is not binding on me because I am

18    obligated to make an independent calculation of the guidelines.

19    I am not suggesting that I will come to a different calculation

20    than the one set forth in the plea agreement, but I could.  If

21    I did come up with a different calculation than the one in the

22    plea agreement, you would still be bound by your guilty plea,

23    and you would not be allowed to withdraw your plea.

24          Do you understand?

25          THE DEFENDANT:  I understand, your Honor.

N8FKMCGP

1    THE COURT:  Another feature of your plea agreement is

2    that you have agreed not to appeal or otherwise challenge any

3    sentence that is at or below the stipulated sentencing

4    guideline range of 57 to 60 months in prison.

5    Do you understand?

6    THE DEFENDANT:  I understand, your Honor.

7    THE COURT:  The sentencing guideline range is actually

8    57 to 71 months, as reflected in the plea agreement at least.

9    The reason I said 57 to 60 months is that a statutory maximum

10   sentence for this crime is five years, or 60 months, and that

11   stands as an upper limit on the sentence that could be imposed.

12   If I were to sentence you to 60 months in prison or

13   anything less than 60 months in prison, you would have no right

14   to appeal or otherwise challenge that sentence.

15   Do you understand?

16   THE DEFENDANT:  I understand, your Honor.

17   THE COURT:  I'd like to discuss one other aspect of

18   this agreement, actually with counsel.

19   I want to turn your attention to page 1, paragraph 3,

20   of the agreement — that's the last paragraph on page 1 — and,

21   in particular, the first sentence of the agreement.  It states,

22   in relevant part:  "The defendant will not be further

23   prosecuted criminally by this office for conspiring to violate

24   and violating IEEPA from in or about the spring of 2021 through

25   in or about November 2021."

N8FKMCGP

1          For brevity, I've omitted some text from what I've

2     just read because my focus is specifically on the language "in

3     or about"; that is, the agreement provides that the

4     U.S. Attorney's Office will not, with the exception of criminal

5     tax violations, further prosecute you for the instant offense

6     carried out from in or about the spring of 2021 through in or

7     about November 2021.  That language seems to reflect a slight

8     modification from the text of the superseding information,

9     which charges you with having carried out Count One "from at

10    least in or about the spring of 2021 up to and including at

11    least in or about November 2021."  I just want to make sure

12    that that change was intentional.

13          MS. DELL:  Yes, your Honor.

14          THE COURT:  Mr. McGonigal, does this written plea

15    agreement that you signed this morning constitute your complete

16    and total understanding of your agreement with the government?

17          THE DEFENDANT:  It does, your Honor.

18          THE COURT:  To the best of your knowledge, has

19    anything been left out of the agreement?

20          THE DEFENDANT:  No, your Honor.

21          THE COURT:  Other than what is written in the plea

22    agreement, has anyone made any promise to you or offered you

23    anything in order to induce you to sign this agreement or to

24    plead guilty here today?

25          THE DEFENDANT:  No.

N8FKMCGP

1      THE COURT:  Has anyone threatened you or forced you to

2    sign the plea agreement?

3      THE DEFENDANT:  No.

4      THE COURT:  Has anyone made a promise to you as to

5    what your sentence will be in this case?

6      THE DEFENDANT:  No.

7      THE COURT:  Could you please tell me, in your own

8    words, what you did that makes you believe that you are guilty

9    of the offense charged in Count One of the superseding

10   information.

11      THE DEFENDANT:  May I stand, your Honor?

12      THE COURT:  You may, if you wish.

13      And are you going to read from a document?

14      THE DEFENDANT:  I am.

15      THE COURT:  Okay.

16      THE DEFENDANT:  Just to reference.

17      THE COURT:  Okay.

18      Who prepared those notes?

19      THE DEFENDANT:  I did, your Honor.

20      THE COURT:  Okay.

21      Have you discussed them in advance with Mr. DuCharme?

22   Just yes or no.

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  Did he provide, just yes or no, any input

25   on the notes?

N8FKMCGP

| 1 | THE DEFENDANT:  He did not, your Honor.

| 2 | THE COURT:  Okay.  I don't want you to read any notes

| 3 | that anyone else had any input on unless they reflect your true

| 4 | beliefs and understanding and admission of guilt.

| 5 | THE DEFENDANT:  They're my words in totality, your

| 6 | Honor.

| 7 | THE COURT:  They're complete, truthful, and accurate?

| 8 | THE DEFENDANT:  They are, your Honor.

| 9 | THE COURT:  All right.  Please speak louder and more

| 10 | slowly than you think you need to, so that I can hear you from

| 11 | here.

| 12 | THE DEFENDANT:  First, good afternoon, your Honor.

| 13 | Thank you for finally allowing me to appear and be heard here

| 14 | today in this proceeding as this, as you can imagine, has been

| 15 | a painful process not only for me, but my family, friends, and

| 16 | loved ones.

| 17 | I appear before you today to reflect on this entire

| 18 | situation, as I understood what I have done, and I understood

| 19 | what my actions have resulted in, and I am deeply remorseful

| 20 | for it.

| 21 | I appear before you in this court to take full

| 22 | responsibility, as my actions never intended to hurt the

| 23 | United States, the FBI, and my family and friends.

| 24 | I want to be clear, in my own words, what I have done

| 25 | and the conduct for which I'm being charged.

N8FKMCGP

1    Between the spring and fall of 2021, about three years

2    after my retirement from the FBI, while I was living in

3    Manhattan, I agreed with another party to collect open source

4    derogatory information about a Russian oligarch named

5    Vladimir Potanin, who was a business competitor of

6    Oleg Deripaska.  I knew that Deripaska had been put on a

7    sanctions list by the U.S. Government.  It was my understanding

8    that the information I collected ultimately would be used to

9    try to get Potanin on the U.S. sanctions list.

10    I understood that the work I was conducting would

11    provide some benefit to Deripaska.  And under the U.S. law, I

12    was not supposed to provide any service to Deripaska, even

13    indirectly.

14    I received payments of $17,500 for the work I

15    performed, and believed these payments came from someone

16    representing Deripaska.  My understanding was that the payments

17    were made to two corporations, neither of which were registered

18    to me, to make it difficult to attribute the source of the

19    payments to Deripaska.

20    I want to thank you, your Honor, and the court for

21    treating me fairly throughout the entirety of this process.  I

22    want to thank the prosecution team and the FBI for their

23    professionalism and treatment of me in this entire proceeding.

24    Finally, I want to thank Bracewell, Mr. DuCharme, and

25    Ms. Megan Maloney for their zealous representation.

N8FKMCGP

1          Thank you.

2          THE COURT:  Thank you, Mr. McGonigal.

3          I now want to go through this step by step.

4          This may be a bit repetitive of what you've said, but

5    I want to make sure that I have everything that the Court

6    needs.

7          Did you and at least one other person agree to violate

8    federal law, specifically to violate the International

9    Emergency Economic Powers Act and to commit money laundering?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  From in or about August 2021 through in or

12   about November 2021, did you agree with others to provide

13   services for Mr. Deripaska?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  And you knew that Mr. Deripaska had been

16   designated by the Department of the Treasury's Office of

17   Foreign Assets Control; is that correct?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  And you did not have authorization from

20   the United States Government to provide services to

21   Mr. Deripaska; is that right?

22         THE DEFENDANT:  That's right; no, your Honor.

23         THE COURT:  Did you know that what you were doing was

24   wrong and unlawful?

25         THE DEFENDANT:  Yes, your Honor.

N8FKMCGP

1          THE COURT:  From in or about August 2021 through in or

2     about November 2021, did you and others receive and route

3     payments through certain corporations?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Can you provide an example of, or describe

6     a bit further in some additional detail, these financial

7     transactions?

8          THE DEFENDANT:  Yes, your Honor.  The money was

9     effectively wired from a bank — I believe it was Gazprombank —

10    through Cypress and then into a bank account in New Jersey, to

11    a corporation in New Jersey.  That led payment from the account

12    in Jersey to my bank account for the services provided.

13         THE COURT:  So is it correct that those financial

14    transactions were structured in a way to conceal that the

15    payments had originated from Mr. Deripaska?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Did you know that the property constituted

18    the proceeds of unlawful activity, namely, the violation of

19    IEEPA?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Did you and at least one other person

22    agree to conduct and attempt to conduct the financial

23    transaction knowing that it was designed to conceal or disguise

24    the nature, location, source, ownership, or control of the

25    proceeds of specified unlawful activity, namely, the violations

N8FKMCGP

1    of IEEPA?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Can you explain how you and another person

4    or persons planned to conduct or attempt to conduct the

5    financial transaction so that it would not be revealed that the

6    money was the proceeds from your work that violated IEEPA?

7              THE DEFENDANT:  The account was established in Cypress

8    by the payee and then wired from that account to an account at

9    a bank here in the U.S., represented by a company in

10   New Jersey, and it wasn't coming directly from Gazprombank in

11   Russia.

12             THE COURT:  And you planned that with another person

13   or persons, correct?

14             THE DEFENDANT:  Yes.  Your Honor.

15             THE COURT:  Did you knowingly become a member of the

16   conspiracy, and did you join in it willfully, that is, with the

17   intent to further the unlawful purpose of the conspiracy that I

18   just described?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  So you knew of the unlawful purpose of the

21   plan, and you agreed to join in the plan; is that right?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Did these actions take place in this

24   district?

25             THE DEFENDANT:  Yes, your Honor.

N8FKMCGP

| | |
|---|---|
| 1 | THE COURT:  Is there anything else that you would like |
| 2 | me to know at this time? |
| 3 | THE DEFENDANT:  No, your Honor; that's all. |
| 4 | THE COURT:  Thank you. |
| 5 | Ms. Dell, is there anything further you would like me |
| 6 | to ask the defendant? |
| 7 | MS. DELL:  No, your Honor. |
| 8 | THE COURT:  Mr. DuCharme, do you know of any valid |
| 9 | defense that would prevail at trial? |
| 10 | MR. DuCHARME:  I've discussed the defenses with my |
| 11 | client, and he has knowingly and well informed made the |
| 12 | decision to plead guilty, your Honor. |
| 13 | THE COURT:  Mr. DuCharme do you know of any other |
| 14 | reason why your client should not be permitted to plead guilty |
| 15 | to Count One today? |
| 16 | MR. DuCHARME:  I do not, your Honor. |
| 17 | THE COURT:  Ms. Dell, would you please explain what |
| 18 | the government's evidence against Mr. McGonigal would be if |
| 19 | Mr. McGonigal were to go to trial. |
| 20 | MS. DELL:  If this case proceeded to trial, the |
| 21 | government's evidence would include, among other things: |
| 22 | Records and testimony demonstrating that Oleg Deripaska was a |
| 23 | specially designated national during the time period of the |
| 24 | conspiracy; and that Mr. McGonigal was aware of that fact from, |
| 25 | among other things, his prior work at the FBI, and after he |

N8FKMCGP

1   left the FBI, his efforts to remove Mr. Deripaska from the

2   sanctions list.

3         In addition, it would include electronic

4   communications among McGonigal, Shestakov, and Deripaska's

5   agent.  The communications relate to, among other things, the

6   creation of a contract to provide services to Deripaska.  In

7   relation to that contract, testimony and other evidence would

8   demonstrate that McGonigal did not have a license from the

9   Department of The Treasury's Office of Foreign Assets Control

10  to perform services under the contract.

11        In addition, the government would provide electronic

12  communications between McGonigal and subcontractors, who,

13  pursuant to the contract, McGonigal directed to look for dirt

14  on Deripaska's rival and the rival's Russian corporation.

15  There would also be electronic messages showing that in or

16  about October and November 2021, McGonigal and his

17  coconspirators were in negotiations for McGonigal to obtain

18  electronic files, which would reveal hidden assets valued at

19  more than $500 million in return for a fee of 650,000 to

20  3 million dollars.

21        In addition, there would be testimony, photographs,

22  and other documentary evidence demonstrating meetings between

23  and among McGonigal, Shestakov, and Deripaska's agent, among

24  others, including at least one meeting attended by McGonigal,

25  Shestakov, and Deripaska's agent in Manhattan.

N8FKMCGP

1          Finally, there would be bank records testimony and

2    communications showing that at the direction of McGonigal, and

3    pursuant to the contract discussed before, money was

4    transferred from Deripaska through two shell companies and then

5    to McGonigal.

6          THE COURT:  Thank you.

7          Mr. McGonigal, do you understand that if you decided

8    to plead not guilty to the charge in the superseding

9    information and the case were to go to trial, that would be the

10   evidence that the government would introduce at trial?

11         THE DEFENDANT:  I understand, your Honor.

12         THE COURT:  Mr. DuCharme, do you agree that there is a

13   sufficient factual predicate for a guilty plea?

14         MR. DuCHARME:  I do, your Honor.

15         THE COURT:  And is there any reason why I should not

16   accept it?

17         MR. DuCHARME:  No, your Honor, none that I'm aware of.

18         THE COURT:  Ms. Dell, do you agree that there is a

19   sufficient factual predicate for a guilty plea?

20         MS. DELL:  Yes, your Honor.

21         THE COURT:  Is there any reason why I should not

22   accept it?

23         MS. DELL:  There is no reason.

24         THE COURT:  Mr. McGonigal, at this time, do you wish

25   to enter a plea of guilty to Count One of the superseding

N8FKMCGP

1   information?

2           THE DEFENDANT:  I do, your Honor.

3           THE COURT:  Because you have acknowledged that you

4   are, in fact, guilty as charged in Count One of the superseding

5   information, because I am satisfied that you know of your

6   rights, including your right to go to trial, and that you are

7   aware of the consequences of your plea, including the range of

8   penalties that may be imposed, and, finally, because I find

9   that you are knowingly, intelligently, and voluntarily pleading

10  guilty, I hereby accept your guilty plea and enter a judgment

11  of guilty on Count One of the superseding information.

12          Having done that, I will now execute the consent

13  preliminary order of forfeiture and have it docketed.

14          Ms. Williams, I'm going to hand this to you.

15          Mr. McGonigal, we talked a bit about sentencing

16  earlier, and at a later point in this case, we will begin the

17  process of sentencing.  The United States Probation Office will

18  want to interview you in connection with preparing the

19  presentence investigation report.  I'm going to order that that

20  interview not take place unless your attorney or a

21  representative from his office is present with you.

22          Do you understand?

23          THE DEFENDANT:  I understand, your Honor.

24          THE COURT:  If you choose to speak with the probation

25  office, I would ask you to ensure that what you disclose is as

N8FKMCGP

1    complete and accurate as possible.  The presentence report is

2    something that I will rely on when I impose your sentence.

3            You and your lawyers will have an opportunity to

4    review the report prior to sentencing, and I would urge you to

5    review it with care because there may be information in the

6    report that you might wish to modify or correct or that you

7    wish to object to, and I want you to have the chance to do so.

8            Do you understand that?

9            THE DEFENDANT:  I understand, your Honor.

10           THE COURT:  All right.  I will now set a date for

11   sentencing.

12           Does Thursday, December 14th, work for everybody?

13           MR. DuCHARME:  It works for the defense, your Honor.

14           MS. DELL:  It works for the government.

15           THE COURT:  Let's set Thursday, December 14th, at

16   1:30 p.m.

17           In accordance with my individual rules in criminal

18   cases, the defendant's submission is going to be due two weeks

19   before sentencing, so that would be Thursday, November 30th,

20   and the government's submission will be due one week before

21   sentencing, so that's Thursday, December 7th.

22           Are there any questions about that or concerns?

23           MS. DELL:  No, your Honor.  However, the government

24   just wanted to raise one point.

25           The government understands, based on discussions with

N8FKMCGP

defense counsel, that defense counsel might want to rely on

certain classified information in its sentencing submission.

As a result, the government requests that if the defendant

intends to do that, that the defendant update the government

and the Court in 30 days so that the government has an

opportunity to review what's in that submission and respond

accordingly, in accordance with the Court's sentencing

submission schedule.

THE COURT:  How would we even -- that's fine, and I

will pick a date for that.  But how would we even do that?  We

would be in the SCIF for the sentencing?

MR. DuCHARME:  Your Honor, I can illuminate this a

little bit.

THE COURT:  Please.

MR. DuCHARME:  We have had some discussions with the

government.

As you've alluded to, the 3553(a) factors are the

heart of the sentencing.  Mr. McGonigal is entitled to be

considered under a 3553(a) factor that addresses his personal

circumstances and background with respect to the work that he's

done on behalf of the United States Government.

So it is our expectation that there may be things that

would be material to your Honor to consider about the work that

he's done for the United States that may remain -- likely to

remain classified and sensitive.  So what we've offered to do

N8FKMCGP

1   for the government is for me to first sit down with

2   Mr. McGonigal in an appropriate environment, discuss with him

3   whether or not some of those matters upon which he worked would

4   be important to the Court, assume that some of them remain

5   classified, and then make a proffer to the government as to

6   what we would intend to disclose to the Court in a supplemental

7   classified addendum to our sentencing submission.

8         We're going to make it as transparent as possible, but

9   if there were certain things that we would want to bring to

10  your attention with specificity in which the United States

11  still has equity, we would respect those equities and do it

12  carefully.

13        THE COURT:  All right.

14        Why don't we set Friday, September 15th, as the

15  deadline for the update that Ms. Dell suggested.

16        And now, hearing this from counsel for both sides, I

17  have to ask another question, which is:  By my very quick

18  calculation, the final PSR is not going to be available until

19  late November, and we were just talking about December 14th for

20  sentencing.

21        Given this other dimension now, I want to make sure

22  that there is enough time for all of that to get done, because

23  I want to read every word of everything before that proceeding,

24  and I don't want to be having submissions landing on my desk a

25  day or two before the sentencing.

N8FKMCGP

1        So if people are confident that we don't need more

2   time, we don't need to push out the sentencing in order to

3   allow sufficient time for this extra process relating to

4   potentially classified material, then that's okay with me.

5        MR. DuCHARME:  Your Honor, I have no reason to expect

6   that the classified material is going to slow things down at

7   all.  It's in an abundance of caution to identify certain

8   matters in which he worked.

9        To be frank, we also have had PSRs come out a little

10  bit later than expected, so we wouldn't want to be in the

11  position of receiving the PSR November 28th, for example, and

12  then having it due on the 30th, but we'll remain optimistic

13  until the probation department tells us that they need more

14  time.  We will meet whatever deadline the Court imposes.

15       THE COURT:  All right, look, we'll take that as it

16  comes.

17       So, Mr. McGonigal, the sentencing, like today's

18  proceeding, will be in person here in this courtroom 12B.

19       Is there any objection to the current bail conditions

20  being continued through the date of sentencing?

21       MS. DELL:  No objection.

22       THE COURT:  Mr. McGonigal, do you understand that all

23  of the conditions under which you were released continue to

24  apply, and that a violation of any of those conditions can have

25  very serious consequences for you at the time of sentencing?

N8FKMCGP

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  You must also be present in this courtroom

3   for sentencing on the date and time that I set, that is,

4   December 14th at 1:30 p.m., or you will be guilty of a separate

5   crime, bail-jumping, and will be subject to a fine and/or

6   prison term in addition to whatever sentence you may receive

7   for the crime to which you have just pleaded guilty.

8           Do you understand?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Are there any other matters that either

11  party wishes to raise at this time?

12          MS. DELL:  No, your Honor.

13          THE COURT:  All right.  Thank you, all.

14          MR. DuCHARME:  Nothing from the defense.  Thank you,

15  your Honor.

16          THE COURT:  Thank you.

17          We are adjourned.

18          (Adjourned)

19

20

21

22

23

24

25