O878SHEC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          23 Cr. 16 (JHR)

SERGEY SHESTAKOV,

              Defendant.              Conference

------------------------------x
                                      New York, N.Y.
                                      August 7, 2024
                                      3:10 p.m.
Before:

              HON. JENNIFER H. REARDEN,

                                      District Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
DEREK WIKSTROM
SEBASTIAN SWETT
REBECCA T. DELL
     Assistant United States Attorneys

GLAVIN PLLC
     Attorneys for Defendant
RITA M. GLAVIN


Also present:   LESLIE ESBROOK, DOJ, National Security Division
```

|   |   |
|---|---|
| 1 | (In open court; case called) |
| 2 | THE DEPUTY CLERK:  Counsel, please state your name for |
| 3 | the record, starting with the government. |
| 4 | MR. WIKSTROM:  Good afternoon, your Honor.  Derek |
| 5 | Wikstrom for the government.  I am joined by Leslie Esbrook, a |
| 6 | trial attorney at the National Security Division of the |
| 7 | Department of Justice, as well as colleagues from my office, |
| 8 | Sheb Swett and Rebecca Dell. |
| 9 | THE COURT:  Good afternoon. |
| 10 | MS. GLAVIN:  Good afternoon, your Honor.  Rita Glavin, |
| 11 | along with my client, Sergey Shestakov.  And we thank the Court |
| 12 | for letting us just briefly have a status conference before the |
| 13 | CIPA conferences today. |
| 14 | THE COURT:  Okay. |
| 15 | MS. GLAVIN:  I just wanted to make a record. |
| 16 | THE COURT:  All right. |
| 17 | MS. GLAVIN:  Your Honor, so the record is clear, the |
| 18 | defense was not informed until the government's August 7th |
| 19 | letter today -- well, actually, I should say starting with |
| 20 | yesterday.  The defense learned for the first time yesterday, |
| 21 | in the government's August 6 letter to the Court, that the |
| 22 | purpose of the Section 2 conference was that there was |
| 23 | classified information.  That is what prompted us to follow up. |
| 24 | We had not been told that before.  That prompted our letter as |
| 25 | of last night.  And then this morning, when the government |

Case 1:23-cr-00016-JHR   Document 166   Filed 10/11/24   Page 3 of 14    3
O878SHEC

1  filed their letter of August 7, stating that the purpose of the
2  conference, the Section 2 CIPA conference, was to "provide
3  information about what prompted the government's July 16, 2024
4  letter to the Court," because that information informs the
5  timing and status of potential *ex parte* litigation pursuant to
6  CIPA Section 4.
7         I want to make a record about a couple of these
8  things.  One is we had been asking the government about what
9  the purpose of this was, and this came up at our July 23rd
10 conference.  We did not get any specifics until this letter
11 today.
12        The record needs to be clear that the government's
13 July 16, 2024 letter to the Court sought an adjournment of at
14 least six weeks of the pending August 6, 2024 trial date, with
15 no specifics as to (a) what the government knew, when they knew
16 it, and to the extent that there was classified material, not
17 only when it came to their attention, but to the extent that
18 the government made requests that prompted this classified
19 material review, when those requests were made.  That is not
20 classified.
21        To the extent today that the government wants to talk
22 about timing and status of *ex parte* litigation, that is not
23 classified.  So we object to an *ex parte* CIPA conference to the
24 extent there is anything discussed beyond what is classified.
25 Section 2 CIPA conferences routinely happen in a non-*ex parte*

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

basis, because it is not supposed to be substantive.

So I get it if they have classified info, and we will step out, and they have every right to make that presentation to the Court. But to the extent there is a discussion about timing of review of classified information, we expect to be a part of that discussion. And this is particularly pertinent, your Honor, because——and we will write a letter to the Court making this record——because we will be asking the Court, imploring the Court, to exercise your supervisory judicial authority in case management over their discovery in this case.

The government repeatedly told this Court, and they told defense counsel, that there was no classified information implicated in this case. And this has been going on for 18 months. The government told the Court that, in setting a trial date——this is back in 2023——that the Court need not factor in CIPA litigation. And we have been asking and asking, and the government not only refuses to tell us what they asked, when they asked, and who they asked.

So, Mr. Shestakov, for 18 months, we have thought one thing. In the last two to three months, the whole landscape of discovery and the status of this case from the defense perspective has changed. And it's because they didn't do their job.

So, your Honor, I object because we have sat for 18 months having been told, we complied with our obligations, and

1    trust us, and it's none of your business, Rita Glavin and
2    Sergey Shestakov, how we do our business in pulling discovery
3    together.  We object to the extent there is any discussion
4    before the Court about timing and status without defense being
5    a part of it.  There is a way that this can proceed today that
6    is not *ex parte*, and we can step out and the Court could
7    inquire of the government, please tell me what this classified
8    information is.  You can ask them questions about the
9    classified information.  And then we would request that the
10   parties be brought back in to address the timing, the status,
11   and when they became aware of this, because we are entitled to
12   know.
13            He was entitled to a speedy trial, and the trial dates
14   and everything in this case was informed by their
15   representations which were not true.  And as a result, we made
16   motions to compel.  We issued subpoenas.  We made motions *in
17   limine*.  And we are going to have to do a do-over based on what
18   has been disclosed slowly over the last few months.  And there
19   are motions to compel now, additional ones we are going to
20   make.
21            The fact that we just learned on August 1st, after
22   asking them for months about Evgeny Fokin's telephone, that was
23   seized and imaged in August of 2021, we have been asking them
24   for months because there were problems with the imaging, and we
25   are only told on August 1st that not only was that imaging done

1   by an agent who had never used that software before, it's an
2   incomplete image, and they don't know what they imaged and what
3   they didn't image.  How that came to our attention, when we
4   were supposed to have an August 6 trial date, there would have
5   been motion practice about that months ago.
6              So, I am requesting that the Court let them disclose
7   whatever the classified information is, and talk to them about
8   that, and then invite us back in, the parties, to discuss what
9   is timing and status, because there is no need for that to be
10  on an *ex parte* basis.
11             THE COURT:  You also requested a CIPA conference
12  today.  Are you asking for yours to be *ex parte*?
13             MS. GLAVIN:  Yes, your Honor.  The reason we are going
14  to ask is that we have very specific requests that we would ask
15  the Court to make of the government.  And those requests, both
16  dates and times -- and we will probably be asking for a second
17  one because we don't want to give up our work product or our
18  view of some of the evidentiary issues.
19             So, there are some things I would like to point out to
20  the Court so that you're aware of and it will probably also
21  inform the Court at a Section 4 conference.  So I can do that
22  today.  I am not fully prepared because some of the information
23  that we got in the last couple of weeks has changed the
24  landscape for us about how we view this case.
25             So, yes, I am asking for that, and the reason we are

1  asking for it to be *ex parte* is because it concerns things we
2  want to point out to the Court, as to which we think classified
3  information is relevant, and I don't want to reveal the defense
4  strategy and specific pieces of evidence we have identified.
5          THE COURT:  I don't know that strategy is a reason.
6  In these conferences, they are *ex parte* when there are concerns
7  about classified information and the substance of that
8  information.  If you want to have an *ex parte* conference to
9  talk strategy to me, I'm not sure that I think that's
10 appropriate.
11         MS. GLAVIN:  First, your Honor, two things.
12         Number one is, as the Court may recall, the government
13 submitted *ex parte* a letter to the Court about how they had
14 satisfied their *Brady* obligations.  That shouldn't have been *ex*
15 *parte*, if that's the standard here.  Because their view is it's
16 none of my business.  So we will move to unseal that, and that
17 should not have been done *ex parte*.  That's already been done
18 in that case.
19         But one of the reasons that it's important for you to
20 meet *ex parte* with the defense is that, because of the nature
21 of the classified information, you end up, Judge, standing in
22 our shoes.  And so we are entitled to have an *ex parte*
23 conference in the same way the government is, but for a
24 different reason.  One is because we don't get to ask the
25 questions directly of them about the classified information.

1   They have told me nothing.  But what we do get to do is inform
2   the Court about specifics with respect to the defense, so that
3   when you stand in our shoes, Mr. Shestakov's shoes, as defense
4   counsel, in assessing what they are telling you, yes, that's
5   part of our work product and strategy, and the process is set
6   up so that we are able to do that when you stand in our shoes.
7           THE COURT:  You have already made many arguments
8   publicly about what you believe the intelligence community has
9   that you think should have been produced to you.  So how is
10  this different?
11          MS. GLAVIN:  Because there are some very specific
12  pieces I want to point out to the Court, dates and things that
13  we have identified in discovery, that I don't want to reveal to
14  the government.  We don't have any burden at trial, and I don't
15  want to reveal to the government what we have seen and its
16  meaning to us.  I am willing to reveal it to the Court because
17  I don't get to ask and hear what it is.  There is a wall.  You
18  are the person straddling both sides of that wall in this case.
19          THE COURT:  Let me turn to the government.
20          First, what is your position on the defense's argument
21  that whatever you want to tell me need not be done *ex parte*?
22          MR. WIKSTROM:  My position is that the information we
23  are going to provide to the Court is classified.  I am trying
24  to think about what I can say here.  I can't provide to the
25  Court the information I intend to provide today if the defense

is in the room.  I can't provide to the Court the information I plan to provide today if we are not in a secure courtroom.  I just can't do it.  I can't do it if there is a risk that the Court is going to unseal it later.  I can't take that risk.  I am not allowed to disclose the information in a way that would be that risky.

I will say this 20-minute proceeding is, while we are making records, pure gamesmanship, and an obvious end run around the order the Court issued this afternoon, which already decided this exact issue.  But beyond that, all I can say is we have got a status update for the Court, it includes classified information, and that's what we intend to provide at the Section 2.

THE COURT:  To the extent we get into timing and notice, which I understood we would, what is your position on then having the defense come back in for that part?

MR. WIKSTROM:  There is no information that I intend to provide to the Court today -- let me bracket that.  There is some basic background information about the Justice Manual and the government's policies that I could provide in open court today, that I will provide sort of by way of situating us.  But beyond that, there is no information I intend to provide at the Section 2 that I can provide with the defense in the room.

THE COURT:  What is your position on defendant's request for an *ex parte* conference?

O878SHEC

MR. WIKSTROM:  The government has not objected to the conference.  As we expressed in our letter, we are a little puzzled about why it's necessary.  I will say, I know from both Second Circuit case law and case law in this district that it is relatively common for judges to hold *ex parte* conferences with defense counsel in order to inform their consideration of issues on Section 4, and I don't in principle object to that.

Here, I don't know what I don't know.  So I don't know what Ms. Glavin plans to say in her conference.  To the extent there is information that ought to be permitted to be shared with the Court *ex parte* to inform the Court's analysis of any CIPA issues, it makes sense to me to do that *ex parte*.  To the extent it's just going to be more of the same as in all her letters, more criticism of the government's discovery, as we have said repeatedly now, I think she should just make a motion, to which we can respond.

THE COURT:  All right.

Ms. Glavin, I'd rather do your conference on a different day.  Just based on what you have told me orally right now, I am not comfortable having an *ex parte* conversation with you without seeing the authorities.  I am happy to reschedule it in the near term, but I am not going to do that today.

MR. WIKSTROM:  Your Honor, if I can make one additional point for the record on that.  We are not asking at

1   the anticipated Section 2 for the Court to do anything; we are
2   not asking for the Court to make any rulings, and we don't
3   intend to make any arguments about relief the Court ought to
4   grant.  I don't think we are going to be asking the Court to do
5   anything today that will be impacted by a delay in any
6   additional *ex parte* conferences.
7            THE COURT:  That was my understanding from the letter
8   you sent today.
9            Ms. Glavin, if you would put in a letter to me what it
10  is that you want to discuss and what your authorities are, I
11  will take it from there.
12           MS. GLAVIN:  Your Honor, we will.  I do want to make
13  clear we object to the extent the government has a conference
14  in anything other than just the pure classified information
15  that's discussed.
16           So, for instance, if it's something that's part of
17  SCI, sensitive compartmented information, and it is anything
18  related to that, that's fine, if it's a particular program or
19  project.  But to the extent there is a discussion about what
20  agency is involved, that is not classified.  To the extent
21  there is a discussion about the timing as to when they will get
22  certain materials from an agency, we will review those
23  materials.  And then, of course, Judge, then it comes to you
24  for review, which is part of the Section 4 process.  None of
25  that is classified.  We are entitled to know that, particularly

given Mr. Shestakov's right to a speedy trial and that the government moved two and a half weeks before trial, without any explanation, a case that they had investigated for two years, that they then had indicted for a year and a half, as to what suddenly came up now. We have a right to know that because I have a right to make motions about this.

And, of course, the government——I just have to say this, Judge——the government wants the Court to think -- I am kind of chuckling to myself about the gamesmanship. What the government wants you to think is that I have to make a motion for you to do something. The Court has inherent judicial supervision power. That's why you do at the initial appearance, that's why Rule 5(f) has the *Brady* order. The judge has a right, when the government doesn't meet its obligations, or when they have said things to the Court that turned out to be inaccurate or not true, to inquire. The judge has a right to say these things. So I think the letter we are going to put in is to ask you to start exercising that power, because there is a serious problem in this case that I have never seen before, as a prosecutor or defense lawyer.

So, I want to make that record, but to the extent timing is discussed, volume of information is discussed, when your Honor might be able to review something, none of that is classified. So we ask to be a part of that.

With respect to the *ex parte* conference, it is routine

for defense counsel to have *ex parte* conferences with the judge.  It can sometimes deal with client relationships.  It can deal with making proffers to the Court, because we don't have a burden and there's constitutional rights.  But it routinely happens --

            THE COURT:  I understand that, but I want to know in your case why you want it to happen.  I want you to write to me about what it is you would like to talk about at an *ex parte* conference and why it's proper with authorities.

            MS. GLAVIN:  Yes.  And one of things that we have been debating doing is a PowerPoint presentation for the Court.

            MR. WIKSTROM:  Your Honor, may I correct just one possible misimpression?  I want to make sure I am correcting it on a record that has got everyone in it and in an open transcript.

            THE COURT:  Yes.

            MR. WIKSTROM:  Without getting into what steps the government took in this case, as a general matter, the government, as I think the Court knows, conducts prudential searches with other agencies in the intelligence community.  My understanding, and Ms. Esbrook will jump up and tell me if I am wrong about this, I suspect, is that the members of the intelligence community, when they receive requests relating to a particular case and indicate that they have responsive results, view that information as itself classified.

1         In other words, I am not saying what the government
2    has done in this case, but if the government, as a general
3    proposition, sends an intelligence community agency a request
4    for a defendant's identifiers, that agency's response is, oh,
5    yeah, we have 500 documents about that guy, come on and look at
6    them, that information would be classified, as I understand it.
7         THE COURT:  Okay.
8         MS. GLAVIN:  We object.  We don't agree with that, but
9    we don't have to litigate it now.  The government takes a very
10   broad view of what is classified and top secret and not.  Been
11   there, done that.  And they are going to continue to do it
12   because they don't want me anywhere near it.  I don't blame
13   them.  Because every time we get closer to something, it keeps
14   falling apart.
15        Thank you, your Honor.
16        THE COURT:  Thank you.
17        (Adjourned)